**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JASPER "CLINT" GAULDING, JR. and
LILLIE GAULDING,

Plaintiffs, Case No.

ABBOTT LABORATORIES, INC. JURY TRIAL DEMANDED

Defendant.

______________________________________/

## COMPLAINT

Plaintiffs Jasper "Clint" Gaulding, Jr. and Lillie Gaulding, husband and wife, by and through their attorneys, file this Complaint against Abbott Laboratories, Inc. ("Abbott") as follows:

## I. Introduction

1. This is a products liability action seeking damages for personal injuries sustained by Mr. Gaulding arising from his use of a defective product designed, manufactured, labeled, distributed, and/or otherwise placed into the stream of commerce by Defendant. As set forth herein, Mr. Gaulding suffered severe injuries and hospitalization as a foreseeable, direct, and proximate result of defects in his Trifecta GT Tissue Heart Valve, serial number 17434539, Model number TFGT-23A (the "Trifecta valve" or "Device") that was implanted on November 30, 2018, at Wellstar Kennestone Hospital in Georgia. Mr. Gaulding brings this action to

recover for the damages caused by Defendant's conduct. Lillie Gaulding asserts a claim for loss of consortium.

## II. Parties

2. Plaintiffs are, and at all relevant times were, citizens of Georgia and residents of Hogansville, Georgia.

3. Abbott Laboratories, Inc. is and was at all times herein a corporation foreign to Georgia with its principal place of business at 100 Abbott Park Road, Abbott Park, IL, 60064, that designated CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia, 30046-4805 as its Georgia registered agent to receive service of process.

## III. Jurisdiction and Venue

4. This Court has personal jurisdiction over Defendant pursuant to Ga. Code Ann. § 9-10-91, under which a court in Georgia may exercise personal jurisdiction over any nonresident as to a cause of action arising from, among other things, the transaction of any business within Georgia; the commission of a tortious act or omission within Georgia; or the commission of a tortious act or omission outside of Georgia, if the tortfeasor regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia.

5. Defendant meets one or more of these conditions, insofar as Defendant

is, and at all relevant times was, involved in the design, assembly, manufacture, testing, packaging, labeling, marketing, distribution, sale, and/or promotion of, and/or was otherwise involved in the placing in the stream of commerce, medical devices including the Trifecta Device, and thus transacted business within Georgia; committed torts within Georgia as pled herein; and/or committed torts outside of Georgia as pled herein while regularly doing and/or soliciting business in Georgia and/or deriving substantial revenue from interstate commerce within Georgia, through their substantial and purposeful transactions of business there, including but not limited to their sales of the Trifecta valve, for which Defendant should reasonably expect its acts to have consequences in Georgia.

6. This Court has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states and a foreign state.

## IV. Factual Allegations

### A. Background of the Trifecta Device

7. St. Jude Medical, Inc. (“St. Jude”) originally developed, licensed, manufactured, marketed and sold Trifecta and Trifecta GT heart valve replacement devices. The Trifecta GT valve is a Class III medical device that was approved by the U.S. Food and Drug Administration (“FDA”) through the Premarket Approval

("PMA") process in 2016 based on information and clinical data provided by St. Jude pursuant to 21 CFR 814 and assigned PMA No. P100029.

8. Abbott is a multinational medical device and health care company that wholly acquired St. Jude on or about January 4, 2017 (Abbott and St. Jude are collectively referred to herein as "Abbott").

9. Abbott has withdrawn its Trifecta valves from the marketplace, recalled all remaining inventory in the marketplace and has acknowledged defects in the Trifecta valves, including early Structural Valve Deterioration ("SVD"). On February 27, 2023, the FDA issued "Abbott Trifecta Valve: Potential Risk of Early Structural Valve Deterioration - Letter to Health Care Providers" which provided:

> The U.S. Food and Drug Administration (FDA) is informing health care providers about the potential risk of early structural valve deterioration (SVD) with Abbott Trifecta valves, including the Trifecta Valve and the Trifecta Valve with Glide Technology (Trifecta GT), which feature leaflets externally mounted to the valve frame.
>
> Information from published literature suggests a higher cumulative incidence of early (five years or less) SVD for Trifecta valves compared to other commercially available surgical bioprosthetic valves. The FDA is working with the manufacturer to evaluate information from all available sources on this issue.

**Exhibit 1 hereto**.

10. Abbott issued a separate safety advisory that same date. **Exhibit 2 hereto**.

11. On July 31, 2023, Abbott initiated a U.S. Market Withdrawal for the

Trifecta valves, including a recall of all remaining inventory in the marketplace, that provided in relevant part:

> Dear Valued Customer,
>
> The purpose of this letter is to inform you that Abbott is initiating a US Market Withdrawal for the Trifecta family of valves (see Table 1 below) and will be removing the limited remaining inventory from the field.
>
> On February 27, 2023, Abbott and the US FDA communicated the potential for early Structural Valve deterioration (SVD) and provided patient management considerations for those patients implanted with the Trifecta and Trifecta GT valves. The assessment of incidence and risk associated with early SVD has not changed since the February communication. Abbott continues to work closely with the FDA on post-market surveillance associated with prior implants.
>
> Abbott decided to discontinue its Trifecta family of valves to focus on tissue heart valve solutions that maximize possibilities for lifetime management of valvular heart disease. Abbott is initiating inventory related activities world-wide in accordance with respective regulatory frameworks.

**Exhibit 3 hereto.**

### B. Mr. Gaulding's Experience with his Trifecta Valve

12. The Trifecta valve was represented and warranted to last fifteen to twenty years.

13. On October 24, 2024, approximately 6 years after it was implanted, Mr. Gaulding was hospitalized in Atlanta and required emergency medical care. The medical records from Emory University Hospital noted, "The patient is critically ill and requires continued critical care treatment." During that hospitalization it was

determined that the Trifecta valve had SVD and had failed. The medical records noted, "The Trifecta was heavily degenerated with brittle calcium throughout all leaflets" and with "leaflets that are all severely restricted." The Trifecta valve was surgically removed and replaced at Emory University Hospital in Atlanta on October 31, 2024. Mr. Gaulding remained hospitalized there for thirteen days and required significant in-patient and out-patient care.

14. The removal of a defective medical device is a serious, invasive, and dangerous procedure.

15. As a result of the defects and violations detailed herein, Mr. Gaulding's Trifecta valve failed, resulting in hospitalization and the Device's removal and replacement.

16. As a foreseeable, direct, and proximate result of Abbott's conduct described herein, Mr. Gaulding has suffered damages, including pain and suffering, mental anxiety and anguish, and medical bills in amounts to be proven at trial.

### C. Legal Requirements Following Premarket Approval of the Trifecta Device

17. Premarket approval is the FDA process of scientific and regulatory review to evaluate the safety and effectiveness of Class III medical devices. Class III medical devices are those that support or sustain human life, are of substantial importance in preventing impairment of human health, or which present a potential unreasonable risk of illness or injury. Due to the level of risk associated with Class

III devices, these devices require a PMA application under Section 515 of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") before they can be sold in the United States. The Trifecta valve is a Class III medical device.

*18.* In a PMA application, the applicant is required to supply information to the FDA. The information required includes device description, clinical safety trials, methods of its product testing, design of the device and specific manufacturing controls, outcome evaluation, and proposed labeling. *The FDA does not conduct independent testing on a medical device in a PMA application. The FDA reviews the documentation provided to them by the PMA applicant and relies on the veracity of the company. The PMA applicant is solely responsible for submitting all truthful and necessary documentation to the FDA.*

19. Once an application for PMA is approved, the holder (here, Abbott) must comply with any and all post-approval requirements established by statute, the FDA, and federal regulations.

20. In particular, federal regulations require a PMA holder such as Abbott to comply with the following requirements:

a. Adverse Events. Review, evaluate, and report to the FDA adverse events associated with the medical device.

i. Report individual adverse events within 30 days after becoming aware of an adverse event or aware of a reportable

death, serious injury or malfunction, 21 C.F.R. § 803.l0(c)(1); and

ii. Report individual adverse events no later than five work days after becoming aware of a "reportable event that requires remedial action to prevent an unreasonable risk of substantial harm to the public health," 21 C.F.R. § 803.10(c)(2)(i).

b. Quality System. Establish and maintain a quality system that is appropriate for the specific medical devices designed or manufactured and that meets the requirement of this part. 21 C.F.R. § 820.5.

c. Management Responsibility. Management with executive responsibility shall establish its policy and objectives for, and commitment to quality. 21 C.F.R. § 820.20.

d. Qualified Personnel. Have sufficient personnel with the necessary educational background, training, and experience to assure that all activities required by this part are correctly performed. 21 C.F.R. § 820.25.

e. Corrective and Preventative Action (CAPA). Establish and maintain procedures for implementing corrective and preventive action, and document all CAPA activities. 21 C.F.R. § 820.100.

f. Complaint Files. Maintain complaint files, processed in a uniform and timely manner, oral complaints must be documented and must

be evaluated to determine whether the complaint represents a reportable event under Medical Device Reporting. 21 C.F.R. § 820.198.

g. Statistical Techniques. Establish and maintain procedures for identifying valid statistical techniques required for establishing, controlling and verifying the acceptability of process capability and product characteristics. 21 C.F.R.§ 820.250.

h. Misbranded Drugs and Devices Prohibited. A device shall be deemed to be "misbranded" if, among other things, there has been a failure or refusal to give required notification or to furnish required material or information to the FDA. 21 U.S.C. § 352(t).

i. Adulterated Products Prohibited. If the manufacturer fails to ensure that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with applicable requirements, including but not limited to the Current Good Manufacturing Practice (CGMP) requirement of the Quality System regulations found at Title 21 Code of Federal Regulations Section 820, then such products are considered "adulterated." 21 U.S.C. § 351(h).

j. Off-Label Promotion Prohibited. A product may not be manufactured packaged, stored, labeled, distributed, advertised, or promoted in a manner that is inconsistent with any conditions to approval specified in

the PMA approval order for the device. 21 C.F.R. § 814.80.

**D. Violations of Federal Law Resulting in Mr. Gaulding's Defective Trifecta Device that Failed**

**1. Overview of FDA Information and Alleged Violations**

21. Abbott, in the manufacture of the Trifecta Devices, violated federal law governing manufacture and quality control of PMA medical devices, which clinical testing confirmed and was identified by the FDA.

22. The FDA has logged nearly 3,000 adverse event reports related to the Trifecta Device associated with PMA No. P100029 including early failures, non-calcified leaflet tears, severe aortic narrowing (stenosis), leaking (regurgitation), and heart failure, resulting in at least 191 documented patient deaths. Mr. Gaulding asserts that Abbott violated at least the following regulations:

a. 21 CFR 803—Medical Device Reporting

b. 21 CFR 814—Premarket Approval of Medical Devices

c. 21 CFR 820—Quality System Regulation

(i) 21 C.F.R. § 820.30(c): Failure to implement procedures to ensure that a device's design input requirements are appropriate and address its intended use, including user/patient needs;

(ii) 21 C.F.R. § 820.100(a)(5): Failure to implement changes in methods and procedures needed to correct and prevent identified quality problems;

(iii) 21 C.F.R. § 820.100(a)(3): Failure to identify all of the actions needed to correct and prevent the recurrence of quality problems.

(iv) 21 C.F.R. § 820.100(a): Failure to establish adequate procedures for corrective and preventive action; and

(v) 21 C.F.R. § 820.198(c): Failure to review, evaluate and investigate, where necessary, complaints involving the possible failure of a device to meet any of its specifications, including failure to adequately evaluate complaints and trending of complaint data on Device problems and failures for signs of safety problems.

23. These and other federal violations caused the foregoing defects and failure of Mr. Gaulding's Trifecta valve, which caused his injuries and damages alleged herein.

24. Abbott's continuous failure to comply with Federal law resulted in Trifecta Devices that did not meet the PMA specifications.

25. Highlighting those FDA actions which most support Mr. Gaulding's factual allegations, including the assessment that his Trifecta valve "was heavily degenerated with brittle calcium throughout all leaflets" and with "leaflets that are all severely restricted," on February 27, 2023, the FDA issued "Abbott Trifecta Valve: Potential Risk of Early Structural Valve Deterioration - Letter to Health Care Providers" which provided in part:

> The U.S. Food and Drug Administration (FDA) is informing health care providers about the potential risk of early structural valve deterioration (SVD) with Abbott Trifecta valves, including the Trifecta Valve and the Trifecta Valve with Glide Technology (Trifecta GT), which feature leaflets externally mounted to the valve frame.
>
> Information from published literature suggests a higher cumulative incidence of early (five years or less) SVD for Trifecta valves compared to other commercially available surgical bioprosthetic valves. The FDA is working with the manufacturer to evaluate information from all available sources on this issue.

**Exhibit 1 hereto**; **Exhibit 2 hereto** (Abbott's separate safety advisory that same date).

26. On July 31, 2023, following ongoing discussions with the FDA, Abbott initiated a U.S. Market Withdrawal for the Trifecta valves, completely halted U.S. sales, discontinued manufacturing, and recalled all unused inventory from hospitals:

> Dear Valued Customer,
>
> The purpose of this letter is to inform you that Abbott is initiating a US Market Withdrawal for the Trifecta family of valves (see Table 1 below) and will be removing the limited remaining inventory from the field.
>
> On February 27, 2023, Abbott and the US FDA communicated the potential for early Structural Valve deterioration (SVD) and provided patient management considerations for those patients implanted with the Trifecta and Trifecta GT valves. The assessment of incidence and risk associated with early SVD has not changed since the February communication. Abbott continues to work closely with the FDA on post-market surveillance associated with prior implants.

> Abbott decided to discontinue its Trifecta family of valves to focus on tissue heart valve solutions that maximize possibilities for lifetime management of valvular heart disease. Abbott is initiating inventory related activities world-wide in accordance with respective regulatory frameworks.

**Exhibit 3 hereto**. The FDA linked the early degradation of the externally mounted leaflets to tearing, calcification, and narrowing (stenosis). This required high rates of risky surgical explants, valve-in-valve interventions, or resulted in death. Unlike normal tissue valves that wear out via slow, progressive calcium build-up, Trifecta valves show a tendency toward spontaneous, non-calcified leaflet tears. Tears are most frequently located near the stent posts or along the bottom of the leaflets. Because the Trifecta line features tissue leaflets mounted externally around the titanium frame, the leaflets are subject to abnormal mechanical stress that causes them to rip or detach

27. Upon information and belief, Abbott knew or should have known from available clinical data that the Trifecta valve was prone to early SVD prior to and after its pre-market approval in 2016, yet failed to timely report the defect to the FDA or timely withdraw the product in violation of the federal regulations.

28. Pursuant to 21 CFR 814.82(c), Abbott's failure to comply with post-approval reporting requirements in the federal regulations with regard to the known early SVD defect in the Trifecta valves, coupled with its total market withdrawal of the product and recall of remaining inventory, are sufficient grounds for withdrawal

of the PMA of the Trifecta Device.

29. At all relevant times, Mr. Gaulding was unaware of any problems with the Trifecta Device and never received any notice or warning prior to its failure and his need to have it surgically removed and replaced on or about October 31, 2024.

## V. Causes of Action

### Count I: Strict Liability Manufacturing Defect

30. Mr. Gaulding incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

31. The Trifecta Device implanted in Mr. Gaulding in November, 2018, was manufactured in violation of the Federal Food, Drug, and Cosmetic Act and federal regulations promulgated pursuant thereto, and was manufactured in violation of Georgia law (Ga. Code Ann § 51-1-11(b)(1)) that parallels federal requirements.

32. The defects in the Trifecta valve, including SVD, arose from violations of the federal regulations, including but are not limited to:

(a) Failing to properly or adequately design, manufacture and sell the Device;

(b) Failing to properly or adequately inspect the Device in order to determine whether it could be used for its intended purpose without injury to persons like Mr. Gaulding;

(c) Failing to provide proper or adequate warnings that the Device could fail;

(d) Failing to timely recall the Device at issue so as to prevent the incident resulting in Mr. Gaulding's injuries;

33. The Trifecta valve implanted in Mr. Gaulding was not reasonably safe for its intended use as a matter of law with respect to its manufacture. The numerous warning letters, market withdrawal and recall detailed herein demonstrate that Abbott was aware of the Device issues involving rapid and spontaneous SVD, among others, thus making the Device not merchantable nor reasonably suited to its intended use. Yet, Abbott still sold the Device to Mr. Gaulding, who subsequently suffered injuries from its defective condition and rapid SVD, one of the very issues that prompted its market withdrawal and Abbott's recall of remaining inventory.

34. As a foreseeable, direct, and proximate result of the Trifecta Device's forgoing defects, the Trifecta valve implanted in Mr. Gaulding failed and required emergency removal surgery, causing Mr. Gaulding to suffer injury and damages, including pain and suffering, mental anxiety and anguish, and medical bills.

**Count II: Negligent Manufacturing Defect**

35. Mr. Gaulding incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

36. The Trifecta valve implanted in Mr. Gaulding was manufactured in violation of the Federal Food, Drug, and Cosmetic Act and federal regulations promulgated pursuant thereto, and was manufactured in violation of Georgia law that parallels federal requirements.

37. As evidenced by the FDA and Abbott's warnings and Abbott's withdrawal of the Trifecta Device and recall of remaining inventory, Abbott defectively manufactured Mr. Gaulding's Trifecta valve, which led to its early failure and which necessitated surgical removal and replacement of the Device.

38. Under Georgia law, Defendant had a duty to individuals, including Mr. Gaulding, to use reasonable care in manufacturing the Trifecta Device, which includes complying with federal regulations designed to ensure the safe manufacture, assembly, inspection, and testing of medical devices.

39. Defendant was negligent in failing to use reasonable care in manufacturing the Trifecta Device, in that it failed to use reasonable care to ensure that Mr. Gaulding's Trifecta Device complied with federal requirements, manufactured Mr. Gaulding's Trifecta Device in a way that did not comply with federal requirements, and failed to adequately test and inspect Mr. Gaulding's Trifecta Device before placing it into the stream of commerce and making it available for sale to Mr. Gaulding. In so doing, Defendants failed to comply with manufacturing requirements imposed by the Device's PMA requirements and post-

approval regulations.

40. As a foreseeable, direct, and proximate result of Defendant's negligence, the Trifecta Device implanted in Mr. Gaulding failed and required removal surgery, causing him to suffer injury and damages, including pain and suffering, mental anxiety and anguish, and medical bills.

**COUNT III: Breach Of Implied Warranty Of Merchantability**

41. Mr. Gaulding incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

42. The Trifecta Device implanted in Mr. Gaulding violates the Federal Food, Drug, and Cosmetic Act and federal regulations promulgated pursuant thereto, and violates Georgia law that parallels federal requirements.

43. At all times relevant hereto, Abbott, as a merchant of medical devices including the Trifecta Device, impliedly warranted to Mr. Gaulding that his Trifecta Device was fit for the ordinary purposes for which it would be used—a life critical prosthetic heart valve.

44. Abbott breached its implied warranty of merchantability in violation of Ga. Code Ann. § 11-2-314 and also breached its implied warranty of fitness for a particular purpose because the Abbott's violations of FDA regulations resulted in the manufacture, sale, and distribution of a defective Trifecta Device to Mr.

Gaulding. He suffered injuries as a result of his Device failing, which prevented him from using the Device as intended.

45. As a foreseeable, direct, and proximate result of Abbott's breach of its implied warranty, the Trifecta Device implanted in Mr. Gaulding failed and required emergency removal surgery, causing him to suffer injury and damages, including pain and suffering, mental anxiety and anguish, and medical bills.

**COUNT IV: Loss of Consortium**
**(By Lillie Gaulding)**

46. Mrs. Gaulding incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

47. Before suffering these injuries, Mr. Gaulding was able to and did perform all the duties of a husband, including assisting in maintaining the home, and providing love, companionship, affection, society, moral support, and solace to Lillie Gaulding. As a direct and proximate result of Abbott's violations, Mr. Gaulding's ability to do so was impaired. Due to the severe and lengthy nature of the injuries and recovery therefrom that Mr. Gaulding sustained, including the physical and psychological strains they caused, Lillie Gaulding was deprived of Mr. Gaulding's consortium and damaged in a total amount to be established by proof at trial. Lillie Gaulding is entitled to recover from Abbott all general and special damages caused by the loss of consortium.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

(a) Award Plaintiffs judgment against the Defendant, Abbott Laboratories, Inc., for all damages permitted by law in an amount to be established by proof at trial, including pre-judgment interest and post-judgment interest;

(b) Tax all costs of this action against Defendant;

(c) Grant Plaintiffs a trial by jury on all issues so triable; and

(d) Grant such other and further relief as this Court deems just and proper.

This 20th day of October, 2026.

*/s/ David M. Cohen*
David M. Cohen
Georgia Bar No. 173503
**COMPLEX LAW GROUP, LLC**
40 Powder Springs Street
Marietta, GA 30064
Telephone: (770) 200-3100
Facsimile: (770) 200-3101
dcohen@complexlaw.com

Darren Summerville
Georgia Bar Number: 691978
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
Telephone: (770) 635-0030
Facsimile: (770) 635-0029
darren@summervillefirm.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ David M. Cohen*________
David M. Cohen
Georgia Bar No. 173503